**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

C&J EQUIPMENT MANUFACTURING
CORPORATION, a New Mexico
Corporation,

      Plaintiff/Counterdefendant,

          vs.                        Civ. No. 23-99 MV/SCY

MICHAEL JASON GRADY; MICHAEL E.
GRADY; TWIN PAK, LLC, a New Mexico
Limited Liability Company; and J&M
BALING, INC., a New Mexico Corporation,

      Defendants/Counterclaimants.

## <u>OMNIBUS ORDER REGARDING MOTIONS TO COMPEL</u>

      Plaintiff brings this lawsuit alleging that Defendants Michael Grady, Michael Jason

Grady ("Jason Grady"), Twin Pak, and J&M Baling breached a contract made between the

parties as to their joint invention of a Double Baler when Defendants attempted to claim sole

ownership. *See generally* Doc. 1. Presently before the Court are six discovery motions:

Plaintiff's five motions to compel as to its initial round of written discovery and Defendants'

motion for protective order. The Court will address each motion in turn in this omnibus Order.

## <u>PROCEDURAL BACKGROUND</u>

      Plaintiff filed its complaint in federal court on February 2, 2023. Doc. 1. On April 3,

2023, Defendants answered and filed their counterclaim. Doc. 5. On April 20, Plaintiff served its

first set of interrogatories and requests for production upon each Defendant. Doc. 13. On May

23, Defendants filed a motion, requesting a 60-day extension on these discovery requests, Doc.

21, which Plaintiff opposed, Doc. 23. The Court held a scheduling conference on May 30 and at

that hearing, granted Defendants' request in part, extending Defendants' deadline to respond to

the first set of interrogatories and first set of requests for production to July 7, 2023, but instructed Defendants to produce documents on a rolling basis rather than all at once at the end of the production period. Doc. 25, 27. On June 8, 2023, Plaintiff served its second set of interrogatories and requests for production on only Jason Grady, making the standard 30-day deadline to respond July 10.[1] Doc. 31.

Defendant Jason Grady served his responses to the first set of interrogatories on May 29, 2023. Doc. 24. As to the remaining outstanding discovery, on the July 7 deadline, at 1:45 a.m., defense counsel emailed Plaintiff's counsel, informing him that,

> My legal assistant in Espanola had a power outage in the middle of Bates numbering and messed up the Bates numbers for a period, which prevented us from assigning documents to the various categories in the RFPs expeditiously. It also corrupted her upload software and delayed our processing the documents we accumulated. We are still working on that, assigning documents to the specific RFP numbers. We will likely get some of the RFP responses done in a few days but not likely to have the final ones until Tuesday, July 18, since I will be out of town at a conference in Colorado next Thursday through Monday.

Doc. 36-1. Defense counsel, however, sent over "the entire document production file that was Bates number[ed]" which covered "all the RFP questions, but they are just not tied to specific RFPs for each of Jason, Michael, J&M or Twin Pak yet." *Id.* at 2; *see also* Doc. 36 (Plaintiff's motion indicating that Defendants produced a USB drive containing electronic files on July 7). Also in the July 7 email, Defendants requested an extension of time until July 19 to respond to the second set of interrogatories directed at Jason Grady. Doc. 37-1 at 2. Plaintiff declined this extension request. *Id.* at 1. Lastly, also on July 7, Defendants Michael Grady, Twin Pak, and J

---

[1] Defendants assert that "Plaintiff calculated serving the second set to coincide with the deadline for the first discovery requests," i.e., July 7, 2023. Doc. 37 at 5. Defendants, however, miscalculate the deadline. The 30-day deadline to respond to discovery served on June 8 falls on Saturday, July 8. *See* Fed. R. Civ. P. 33(b)(2) & 34(b)(2)(A). Because that deadline falls on a weekend "the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday," i.e., July 10. Fed. R. Civ. P. 6(a)(1)(C).

&M Bailing served responses to Plaintiff's first set of interrogatories (Jason Grady having already responded to the first set of interrogatories on June 28). Doc. 38.

On July 9, 2023, Plaintiff filed its First Motion to Compel Defendants' Responses to Requests for Production and For Attorneys Fees. Doc. 36; *see also* Doc. 39 (response); Doc. 46 (reply). Plaintiff asks the Court to compel Defendants to provide complete responses to Plaintiff's first set of requests for production and to find that Defendants have waived any objections to those requests. Doc. 36 at 4-5. The same day, July 9, Defendants filed a Motion for an Extension of Time to Answer and Respond to Plaintiff's Discovery Requests and Motion for Protective Order. Doc. 37; *see also* Doc. 42 (response); Doc. 54 (reply). In that motion, Defendants explain that they have produced all documents responsive to all requests for production, but they have not yet been able to tie the documents to the specific requests. Doc. 37 at 4. They therefore ask for an extension until July 21, 2023 to provide complete responses to Plaintiff's requests for production and a similar extension (or protective order regarding the number of allowable interrogatories) as to the second set of interrogatories propounded on Jason Grady. *Id.* at 6. While the parties were briefing these motions, Defendants served their responses to the first set of requests for production. *See* Doc. 40 (certificate of service as to Twin Pak's responses, filed July 19, 2023); Doc. 41 (certificate of service as to Jason Grady's responses, filed July 21, 2023); Doc. 63 at 3 (second motion to compel, alleging that Michael Grady "belatedly served responses to the Requests for Production after Plaintiff's First Motion to Compel was filed"); Doc. 65 at 3 (second motion to compel, alleging that J&M Baling "belatedly served responses to the Requests for Production after Plaintiff's First Motion to Compel was filed"). In addition, shortly thereafter, Jason Grady served his answers to the second set of interrogatories. Doc. 45 (certificate of service, filed July 27, 2023).

By August 3, 2023, having received all Defendants' responses to the first set of interrogatories and requests for production, Plaintiff sent each Defendant a good faith letter outlining perceived deficiencies. Doc. 63-1 (good faith letter to Michael Grady); Doc. 64-1 (good faith letter to Twin Pak); Doc. 65-1 (good faith letter to J&M); Doc. 66-1 (good faith letter to Jason Grady as to the first set of discovery). Counsel held a telephonic conference on August 8, and later Defendants confirmed that they would supplement their response by August 14 or 15.[2] Doc. 63-2. Thus, the parties agreed to extend the deadline for Plaintiff to file a motion to compel to August 28. Doc. 63-2; Doc. 60. By August 22, 2023, having not received any supplements, Plaintiff filed a motion to compel as to each Defendants' responses. *See* Doc. 63 (Plaintiff's Motion to Compel Concerning Michael R. Grady's Discovery Responses), Doc. 83 (response), Doc. 92 (reply); Doc. 64 (Plaintiff's Motion to Compel Concerning Twin Pak, LLC's Discovery Responses), Doc. 85 (response), Doc. 93 (reply); Doc. 65 (Plaintiff's Motion to Compel

---

[2] The parties appear to have had a misunderstanding as to when Defendants would provide their supplemental responses to the first set of discovery requests. In an email sent August 11, 2023 from defense counsel to Plaintiff's counsel, defense counsel indicates that he is working on supplements but needs more time as he is also working on reviewing Plaintiff's responses to Defendants' discovery requests. Doc. 63-2 at 2-3. Plaintiff's counsel therefore agreed to extend Defendants deadline to file a motion to compel as to Plaintiff's responses to August 28. *Id.* at 2. And when Plaintiff's counsel asks, "What are you proposing as to an extension of the deadline to move to compel concerning the Defendants?" defense counsel responds, "Extend your to 28 too. I will have responses to most items on Monday [August 14] or Tuesday morning [August 15]." *Id.* at 2-3. Plaintiff's counsel then confirmed this agreement: "If you are committing to having supplements to us next week, I will agree to extend the deadline as to Defendants' discovery to August 29," to which defense counsel responded, "Agreed," and "Will not need an extension past Aug. 28." *Id.* at 1. Plaintiff understood this conversation to mean that Defendants would supplement their discovery responses by August 14 or 15 and Plaintiff's deadline to move to compel would be extended to August 28. Doc. 63 at 3. Defendants, however, appears to have understood this conversation to mean that their supplements were due by August 28. Doc. 83 at 2. Although the Court does not question Defendants' stated understanding of this e-mail exchange, Plaintiff's understanding is a more accurate representation of the parties' agreement, especially in light of the unopposed motion and order to extend the motion to compel deadline to August 28. Docs. 58, 60.

Concerning J&M Baling, Inc.'s Discovery Responses), Doc. 84 (response), Doc. 91 (reply); Doc. 66 (Plaintiff's Motion to Compel Concerning Michael Jason Grady's Discovery Responses), Doc. 82 (response), Doc. 86 (supplemental response), Doc. 94 (reply). Defendants then served supplemental responses to the first set of interrogatories and requests for production on August 28, 2023, while the parties were briefing these motions to compel. Docs. 69, 70, 71, 72; *see also* Doc. 81 (Defendant Michael Grady's supplemental answers to the first set of interrogatories, filed September 7, 2023).

All six discovery motions are now currently briefed and ready for a decision. The Court will address each in turn.

## ANALYSIS

I.   **Defendants' Motion for an Extension of Time and to Answer and Respond to Plaintiff's Discovery Requests and Motion for Protective Order (Doc. 37)**

In their "Motion for an Extension of Time to Answer and Respond to Plaintiff's Discovery Requests and Motion for Protective Order," Defendants first request an extension of time until July 21, 2023 to respond to all of Plaintiff's requests for production.[3] Doc. 37 at 6. As to the first set of requests for production to all Defendants, the Court ordered Defendants to respond by July 7, 2023. Doc. 25. However, the Court indicated that Defendants may file another extension motion if exceptional circumstances prevent them from meeting that deadline. Doc. 27 at 2 (scheduling conference recording at 10:07). Defendants have now done so. At 1:45 a.m. on July 7, defense counsel emailed Plaintiff's counsel to state that a power outage would prevent

---

[3] Defendants do not specify if this extension request applies to Plaintiff's first set of requests for production to all Defendants as well as to Plaintiff's second set of requests for production to just Jason Grady. However, because Defendants reference both sets when laying out the procedural history, the Court presumes the extension request applies to both.

Defendants from fully responding to the requests for production. Doc. 37-1. Defendants still provided all the documents responsive to the requests, but were unable to tie the documents to specific requests given the problems caused by the power outage. *Id.* The Court agrees that the power outage was an exceptional circumstance warranting an additional extension request and, given that Defendants produced all the documents and just needed time to tie them to the specific requests, finds good cause to grant a further extension. Although Plaintiff asserts that it will be prejudiced by the delay in receiving these responses, Doc. 42 at 6, discovery in this matter does not terminate until June 25, 2024, and pretrial motions are not due until July 25, 2024, leaving Plaintiff plenty of time to process the information it receives. *See* Doc. 117.[4] Defendants' deadline to respond to Plaintiff's first set of requests for production is therefore extended to July 21, 2023.[5]

As to the second set of requests for production to Defendant Jason Grady, those responses were due July 10, 2023, following the standard 30-day deadline with no extensions. Doc. 31. Because Jason Grady had requested no previous extensions to respond to this second set, and for the same reasons discussed related to the first set, the Court finds good cause to extend Jason Grady's deadline to respond to the second set of requests for production to July 21.[6]

---

[4] At the time Plaintiff made this assertion, on July 24, the existing case management order set Plaintiff's expert disclosure deadline as November 15, 2023 and the discovery termination date as February 9, 2024. Doc. 28. To the extent this created prejudice for Plaintiff, the subsequent extension has alleviated any such concern.

[5] Although this extended deadline passed while the parties were still briefing the present motion, the extension impacts other issues before the Court, such as whether Defendants waived untimely objections, which will be discussed below in connection with Plaintiff's first motion to compel.

[6] Again, although this extended deadline passed while the parties were still briefing the present motion, the extension impacts other issues before the Court which will be addressed by a

Defendants' second request in their motion is for an extension of time until July 21 for Jason Grady to respond to Plaintiff's second set of interrogatories, or alternatively, a protective order as to the second set of interrogatories because Plaintiff exceeded the number of allowed interrogatories. Doc. 37 at 6. As to the requested protective order, Defendants assert that the first set of interrogatories to Jason Grady, including "subparts unrelated to the main question," totaled 61 separate interrogatories and the second set included three additional interrogatories, not including subparts. Doc. 37 at 3. The Court, however, limited interrogatories to 30 by Plaintiff to each Defendant. Doc. 28 at 1. Defendants therefore request a protective order "against the second set of interrogatories propounded on Jason Grady as they are in excess of the number allowed by this Court." Doc. 37 at 6.

Defendants' argument is scant, at best. Defendants provide no specifics in their motion to show the Court that Plaintiff did, indeed, exceed allowed limits. It is not immediately obvious upon reviewing the interrogatories that they contain numerous subparts on different subjects. Doc. 54-1 (first set of interrogatories); Doc. 42-1 (second set of interrogatories). Plaintiff's first set of interrogatories to Jason Grady, on its face, includes only 24 questions. Doc. 54-1. The second set contains three. Doc. 42-1. Defendants do not identify which interrogatories included "subparts unrelated to the main question." Defendants do not explain how they calculated the number of interrogatories to equal 61. Doc. 37 at 3. The Court, therefore, denies this request for a protective order.

Relatedly, Defendants request that the Court "prohibit Plaintiff from serving interrogatories including subparts beyond the limit of 30 stated in the Joint Discovery Plan and

separate order in connection with Plaintiff's second motion to compel as to Jason Grady (Doc. 75).

requests for production on all Defendants." Doc. 37 at 7. The Court declines to make such an advisory and repetitive ruling. The Order Setting Case Management Deadlines and Discovery Parameters already limits the number of allowable written discovery questions to be exchanged by the parties. Doc. 28. If Defendants have any future, specific arguments as to further discovery that they believe violates the discovery parameters, they may file a motion setting forth their argument and request.

As an alternative to a protective order, Defendants ask that Jason Grady's deadline to respond to the second set of interrogatories be extended to July 21, 2023. As with his responses to the second set of requests for production, Jason Grady's responses to the second set of interrogatories were due July 10, which was the original 30-day deadline with no extensions. Doc. 31. Because Jason Grady had no previous extensions to respond to this second set of interrogatories, and given the delay caused by the power outage as discussed above and the lengthy discovery period in this case, the Court finds good cause to extend Jason Grady's deadline to respond to the second set of interrogatories to July 21, 2023.

Lastly, Defendants request "attorneys fees incurred by Defendants in responding to Plaintiff's discovery requests," as well as fees "for bringing this motion." Doc. 37 at 7. However, Defendants cite no authority to support such an award of fees associated with their discovery obligations and the filing of a motion for extension. No such authority is obvious, given that the Court is not granting or denying a motion to compel. *Cf.* Fed. R. Civ. P. 37(a)(5). The Court therefore denies the request for fees.

For these reasons, Defendants' motion for an extension of time and motion for protective order (Doc. 37) is granted in part—as to the extension requests—and denied in part—as to the protective order and fees.

II.     **Plaintiff's First Motion to Compel Defendants' Responses to Requests for
Production and for Attorney Fees (Doc. 36)**

As mentioned above, the Court ordered Defendants to respond to Plaintiff's first set of

discovery by July 7, 2023. Doc. 25. On that deadline, Defendants informed Plaintiff that a power

outage caused problems in Bates numbering and so they served on Plaintiff a USB drive

containing documents, but the documents were not tied to specific requests for production. Doc.

36-1. Thus, Plaintiff filed its first motion to compel on July 9, seeking to compel Defendants to

fully respond to the first set of requests for production and arguing that, because of their failure

to timely respond, Defendants waived any objections. Doc. 36. Defendants eventually served

their responses to the first set of requests for productions after Plaintiff filed its motion to

compel.

Because Defendants have now responded to Plaintiff's first set of requests for production,

Plaintiff's first request—to compel responses—is moot. The Court therefore turns to Plaintiff's

second request—that any objections Defendants raise in response to the first set of requests for

productions are deemed waived because Defendants did not timely raise those objections. The

Court denies this request because Defendants did timely raise objections. Defendant Twin Pak

filed a certificate of service as to its responses to the first set of requests for production on July

19, Doc. 40, and Jason Grady likewise filed a certificate of service as to his responses on July 21,

Doc. 41. The remaining Defendants, Michael Grady and J&M Baling, did not file a certificate of

service as to their responses, but Plaintiff acknowledges that they served their response to the

first set of requests for production by July 21, 2023. *See* Doc. 46 at 2. ("The Defendants . . . did

not purport to provide responses as to each Defendant until July 21, 2023.").[7] And, as discussed

---

[7] Elsewhere in briefing, Plaintiff indicates Michael Grady and J&M Baling "responded earlier"
than July 21. Doc. 46 at 7 & n.3.

above, the Court extends Defendants' deadline to respond to the first set of requests for production to July 21. This extension makes their responses and objections timely.

Lastly, Plaintiff asks for attorney's fees under Rule 37(a)(5)(A) for bringing this motion. Doc. 36 at 5. Rule 37(a)(5)(A) provides that if a motion to compel "is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion." Here, the Court denies the motion to compel and so fees based on the granting of a motion to compel are not warranted.

Plaintiff, however, argues that an award of fees is still required because Defendants did not comply with their discovery obligations until after Plaintiff filed the motion to compel. Doc. 46 at 8. Although Plaintiff is correct that Defendants did not respond to the first set of requests for production until sometime around July 21 (after Plaintiff filed the first motion to compel on July 9), Defendants requested an extension until July 21, which the Court has now granted. Thus, their nondisclosure until that date was substantially justified and an award of fees is unwarranted. *See* Fed. R. Civ. P. 37(a)(5)(A)(ii).

Plaintiff also asks for an award of fees under Rule 37(b)(2)(A) as a sanction against Defendants for their failure to respond to the first set of requests for production by July 7, as ordered by the Court, and their failure to produce documents on a rolling basis. Doc. 36 at 5. However, because the Court extends that deadline as discussed above and because Defendants have now responded to the first set of requests for production, the Court denies this request for fees. *See* Fed. R. Civ. P. 37(b)(2)(A) ("If a party . . . fails to obey an order to provide or permit

discovery . . . the court where the action is pending *may* issue further just orders." (emphasis added)).

In their response, Defendants request "attorney's fees incurred by Defendants in responding to Plaintiff's discovery requests and attorney's fees for bringing this motion." Doc. 39 at 6. The Court denies this request because Defendants cite no authority to justify an award of fees for responding to discovery. Additionally, the Court denies this request because Defendants did not bring this motion. To the extent Defendants are requesting fees for *responding* to this motion, the Court likewise denies such a request. Given Defendants' failure to fully respond to the first set of requests for production by the original July 7 deadline set by the Court, Plaintiff had a basis to file its motion, even though the Court later extended Defendants' response deadline to July 21. *See* Fed. R. Civ. P. 37(a)(5)(B).

## III.   Plaintiff's Motion to Compel Concerning Michael E. Grady's Discovery Responses (Doc. 63)

In its motion to compel directed at Defendant Michael Grady, Plaintiff challenges Defendant Michael Grady's objections to interrogatories, contends many interrogatory answers were incomplete, and challenges his objections to the requests for production. Doc. 63.

### A.   Interrogatories

In response to Plaintiff's first set of interrogatories, Michael Grady inserted various objections (such as overly broad, unduly burdensome, or argumentative) and then, "without waiving that objection," answered the questions. *See generally* Doc. 63-3. Michael Grady's response may largely be a product of the way Plaintiff's interrogatories are structured: In nearly all of its interrogatories, Plaintiff starts with a specific question—such as to explain the business, legal, and other relationship between the Defendants during a set time period— and ends with a broad, general instruction—to identify, state, and explain fully "what material or principal facts,

information, documents, and persons with knowledge of these matters exists, and what knowledge such persons have, that support or relate to your answer to this Interrogatory." *See generally* Doc. 83-1. In its motion to compel, Plaintiff requests the Court overrule Michael Grady's objections, and argues that Michael Grady's responses are insufficient because they "do not provide a statement of what documents or persons with knowledge exist that may support the answer to the Interrogatory." Doc. 63 at 7. Like Plaintiff and Michael Grady, the Court divides Plaintiff's interrogatories into two parts: the specific part and the general part.

      1.    <u>Motion To Compel Related To Broad Language In Plaintiff's Interrogatories</u>

Put plainly, the general part of Plaintiff's interrogatories do not simply seek an answer to a question. They also seek the entire universe of information, material or principal facts, documents, *and* persons that support the answer to the question. Plaintiff does not demonstrate that such an instruction, used without discrimination in nearly every interrogatory to every defendant, is proportional to the needs of Plaintiff's case. "Under our rules, parties to civil litigation are given broad discovery privileges. But with those privileges come certain modest obligations, one of which is the duty to state discovery requests with 'reasonable particularity.' Fed. R. Civ. P. 34(b)(1)(A). All-encompassing demands of this kind take little account of that responsibility." *Regan-Touhy v. Walgreen Co*., 526 F.3d 641, 649 (10th Cir. 2008); *see id.* at 648 (noting the appellant did not even challenge a district court decision finding overbroad the request for "production of *all* manuals for *any* Walgreen's computer systems and programs that might house information about Ms. Touhy" and "to identify *every* person involved in the design and maintenance of those systems"); *see also Moses v. Halstead*, 236 F.R.D. 667, 672 (D. Kan. 2006) ("[A] request or interrogatory is overly broad or unduly burdensome on its face if it (1) uses an omnibus term such as 'relating to' or 'concerning,' and (2) applies to a general category

or group of documents or a broad range of information."); *Hilt v. SFC Inc.*, 170 F.R.D. 182, 186 (D. Kan. 1997) (interrogatories should not require a party to identify "virtually all supporting evidence for each fact," "together with the identification of each knowledgeable person and supporting document"). If Plaintiff's request to identify documents or persons with knowledge were contained in a few of the most important interrogatories, for example, and not simultaneously accompanied by the instruction to identify every other type of supporting information imaginable, the Court might not consider it overbroad. As it is, however, it is an attempt to sweep the entire case. *Hilt*, 170 F.R.D. at 186 (interrogatories should not "sweep an entire pleading" and "require the responding party to provide in essence a running narrative or description of the entire case"). The Court thus denies Plaintiff's motion to compel as it relates to the instruction to identify, state, and explain fully "what material or principal facts, information, documents, and persons with knowledge of these matters exists, and what knowledge such persons have, that support or relate to your answer to this Interrogatory." *See generally* Doc. 83-1.

This ruling necessarily also addresses Plaintiff's argument that Michael Grady's objections make it unclear as to whether he has withheld any information responsive to Plaintiff's broad question. Doc. 63 at 4; *see EPC Real Est. Grp., LLC v. Yates & Yates, LLC*, No. 21-2383-JWB, 2022 WL 36767, at *2 (D. Kan. Jan. 4, 2022) (holding that questions to which an objection is made, followed by a conditional response that includes "without waiving these objections," are "entirely unclear what, if any, information and documents are being withheld on the basis of the objections made"). When a court sustains an overbreadth[8] objection, it will

---

[8] After the 2015 amendments, discoverable information is that which is "relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). In this case,

always be the case that the requesting party will not get all the information it wants. Because

Plaintiff asked for an entire universe of supporting documents, information, facts, and persons, it

is true that Michael Grady's answers do not specify what in that universe he has not identified.

But requiring Michael Grady to describe what information he left out would, in effect, be

overruling, not sustaining Michael Grady's objection.

Having addressed the broad language in most of Plaintiff's interrogatories, the Court now

turns to the more specific request for information contained in the first part of most of Plaintiff's

interrogatories directed to Michael Grady.

    2.    <u>Motion To Compel Related To Narrow Language In Plaintiff's
Interrogatories</u>

Before addressing specific interrogatories, however, the Court pauses to note that, before

filing his response to the motion to compel, Michael Grady supplemented his responses to the

first set of interrogatories. *See* Doc. 83-1. This appears to have resolved the alleged deficiencies

in Interrogatory Nos. 3, 4, 7, and 16 as Plaintiff does not mention them in reply. *See* Doc. 92.

The Court will thus address those interrogatories that Plaintiff still alleges are deficient, even

after Michael Grady's supplementation.

Interrogatory No. 2 asks Michael Grady to:

> State and explain fully what business, legal, or other relationships existed or exist
> between or among each and any and all of the Defendants during the period
> January 1, 2013 to date, including but not limited to the matters pleaded in the
> Complaint, identifying and stating and explaining fully what material or principal
> facts, information, documents, and persons with knowledge of these matters exist,
> and what knowledge such persons have, that support or relate to your answer to
> this Interrogatory.

---

the Court finds the interrogatory language in question overbroad in that it is used
indiscriminately and not proportionately to the needs of the case.

Doc. 83-1 at 2-3. Michael Grady responded, referring in part to work at the J&M Baling yard. *Id.*

Plaintiff believes that such a response is insufficient because Michael Grady "should identify the

employees who did that work and material documents demonstrating the work." Doc. 92 at 8.

The Court has found the language requesting the universe of supporting documents and persons

to be disproportionate to the needs of the case and that Michael Grady's objection was proper.

Michael Grady answered this interrogatory to the extent it called for a specific answer and thus

was not objectionable. Fed. R. Civ. P. 33(b)(3) (interrogatory must be answered to the extent it is

not objected to). Plaintiff now seeks follow-up information about that answer. But a motion to

compel is not a proper avenue to ask a follow-up, additional interrogatory. Because Michael

Grady answered the specific portion of Plaintiff's interrogatory, which asked a different question

than the one to which Plaintiff now seeks a response, the motion to compel is denied as to

Interrogatory No. 2.

Interrogatory No. 5 asks Michael Grady to explain "what the basis is for your denial of

the allegations of Paragraph 17 of the Complaint" concerning the alleged agreement between

Plaintiff and Jason Grady and "specifically if you deny Jason Grady acted 'on behalf of and with

the authority of all Defendants,' and if you do, the basis for that denial." Doc. 83-1 at 5. Plaintiff

asserts that Michael Grady's answer and supplemental answer are incomplete because he failed

to identify who else was present at the prototype testing, failed to identify what documents

support that his company paid for the construction of the prototypes, and does not state whether

Jason Grady acted with the authority of all the Defendants (presumably meaning the other

defendants besides Jason Grady). Although the Court recognizes that Michael Grady might not

have information as to whether Jason Grady acted on behalf of other Defendants, he likely has

information as to whether Jason Grady acted on his behalf. As such, the Court grants the motion

to compel in part: Michael Grady shall state whether he denies that Jason Grady acted on behalf of or with the authority of Michael Grady. The other information Plaintiff complains is missing is not information Plaintiff clearly and specifically sought in Interrogatory No. 5. Therefore, except as noted above, the Court denies Plaintiff's motion to compel with respect to Interrogatory No. 5.

Interrogatory No. 6 seeks information as to Defendants' denial of paragraph 20 of the complaint (alleging Plaintiff worked on the design and drafting of the double baler design). Doc. 83-1 at 6.[9] Michael Grady responded by stating that he has never heard of "any discussion of additions or assistance with the invention" of the double baler by Plaintiff and that "[t]he lack of any such communication even mentioning such a subject is the basis for the answer." Doc. 83-1 at 7-8. In reply, Plaintiff argues that Michael Grady's supplemental response to Interrogatory No. 6 remains "evasive" because "it does not address the substance of Paragraph 20 of the Complaint, which speaks to work performed by Plaintiff and its employees." Doc. 92 at 8-9. But Michael Grady denied having any knowledge of such work performed by Plaintiff and its

---

[9] Although a First Amended Complaint was filed on October 3, 2023, Doc. 107, the interrogatory served before this amendment was directed to the initial complaint. Paragraph 20 of the initial complaint states in full:

> Plaintiff fully or substantially performed and completed its services and tasks as required by the agreement of the parties. Among other services and tasks the design and drafting of the Double Baler, including but not limited to, the Double Baler Design, was completed at Plaintiff's Bloomfield, NM facility. Plaintiff, among other things, also prepared structural calculations and selected structural materials and performed other actions pursuant to the agreement between Plaintiff and the Defendants. Plaintiff's principal, Mr. Thornton, a Registered Professional Engineer, acting pursuant to the agreement, also reviewed and/or approved the Double Baler Design drawings, provided input, authorship and inventorship of the Double Baler and Double Baler Design, and made changes and improvements to the Double Baler and Double Baler Design, among other services.

Doc. 1 at 5 ¶ 20.

employees and explained why he denied it. Plaintiff may not like the answer, but it does not

mean the answer is incomplete. The motion to compel is denied as to Interrogatory No. 6.

Interrogatory No. 10 asks Michael Grady to

state and explain fully what the basis is for your denial of Paragraph 24 of the Complaint [¹⁰], and also stating and explaining fully and identifying what material or principal facts, information, documents, and persons with knowledge of these matters exist, and what knowledge such persons have, that support or relate to this Interrogatory or your denial in answer to this Interrogatory.

Doc. 83-1 at 10. Michael Grady answered:

the two double baler prototypes No[.] 2 and No. 3 were constructed to Jason Grady's dictated specifications and were built at C & J and paid for by GPT, LLC. The balers failed in operational testing for poor construction and Jason Grady thereafter made modifications to his original invention, patented it, and began construction and sales of the patented double baler without any assistance or input from [Plaintiff] . . . .

*Id.* at 11.

Plaintiff asserts that Michael Grady's answer and supplemental answer are insufficient

because he "fails to identify who performed the construction and testing, when, or where, what

modifications were made thereafter and when, when it was patented, and when and how the

construction and sales of the double baler were conducted." Doc. 92 at 9. The interrogatory,

however, does not ask for such specific information. Paragraph 24 of the complaint does not

involve topics such as sales and patents. The interrogatory asked Michael Grady to identify who

---

[10] Paragraph 24 of the initial complaint states in full:

Also pursuant to the agreement, Plaintiff at its facility designed and manufactured two Double Balers. Fabrication of the first Double Baler by Plaintiff began on or about April 6, 2017 and was completed on or about August 31, 2017. Fabrication of the second Double Baler by Plaintiff began on or about April 26, 2017 and was completed on or about February 28, 2018.

Doc. 1 at 6 ¶ 24.

else has knowledge of the circumstances (a portion of the interrogatory the Court has already

found overbroad) and to explain the basis of his denial. Michael Grady explained the basis of his

denial. The motion to compel is denied as to Interrogatory No. 10.

Interrogatory No. 12 asks Michael Grady to explain why Defendants deny the assertion in

the complaint that Jason Grady removed physical and electronic drawings from Plaintiff's

Bloomfield, NM facility. Doc. 83-1 at 12. Michael Grady provided such information, but

Plaintiff remains unsatisfied, seeking further information, such as emails, to support Michael

Grady's claim that Mr. Kiraly gave the drawing to Jason Gardy. Doc. 92 at 9. Again, Plaintiff

does not like the answer, and in essence, seeks not-originally-requested follow-up information to

Interrogatory No. 12. Because Michael Grady answered the specific portion of the interrogatory

that was asked, the Court denies the motion to compel as to Interrogatory No. 12.

Interrogatory No. 13 asks Michael Grady to explain his basis for denying that Plaintiff

C&J was a joint inventor, to which Michael Grady responded, in part, that "C&J was paid for its

work." Doc. 83-1 at 12-13. Plaintiff asserts that this answer is insufficient because Michael

Grady "does not identify persons or documents with information concerning the claims that

'C&J was paid for its work.'" Doc. 92 at 9; *see also* Doc. 63 at 7 (motion to compel, raising an

issue with Interrogatory No. 13). But the non-objectionable portion of the interrogatory merely

asked Michael Grady to explain a contention. He did so. Having sustained his objection to the

overbroad language the motion to compel relies on, the Court will not compel a further response.

Interrogatory No. 14 asks Michael Grady to explain "what the basis is for your allegation

that 'the Twin Pak Baler was designed before engaging with or discussing the production of

drawings with Plaintiff C & J,' and what the date of 'design' was, and describe in detail what

acts Defendants have engaged and are engaging in to manufacture, market, and sell Twin Pak

Balers." Doc. 83-1 at 13. In his response and supplemental response, Michael Grady answered

the first two parts of the questions, explaining his basis for the assertion that the Twin Pak Baler

was designed before engaging with Plaintiff and providing dates of the design. *Id.* His responses,

however, fail to answer the last part of the question (acts Defendants engaged in to manufacture,

market, and sell the Twin Pak Balers). In his response brief, Michael Grady argues that he had

"little to no involvement with double baler and provided what information he had." Doc. 83 at 6.

It is not clear if this assertion pertains to the entirety of Interrogatory No. 14 (related to design

manufacture, marketing, and selling) or to just the first portion of the interrogatory that he

answered (related to design). As such, the Court grants in part the motion to compel as to

Interrogatory No. 14: Michael Grady shall specifically respond to the part of the question asking

him to describe what acts Defendants have engaged in and are engaging in to manufacture,

market, and sell the Twin Pak Baler. If Michael Grady has no responsive information, he should

specifically say so.

Interrogatory No. 17 asks Michael Grady to explain his basis for denying Plaintiff's

assertion that Defendants do not have authorization from Plaintiff to use, publish, or copy the

Double Baler Design. Doc. 83-1 at 15. In response, Michael Grady referred to his answers to

Interrogatories Nos. 5, 6, 10, and 12. Plaintiff argues that those other answers do not answer

Interrogatory No. 17, Doc. 92 at 9, but the Court disagrees. Those answers sufficiently respond

to Interrogatory No. 17, explaining Defendants' claim to the Double Baler Design. *See* Doc. 83-1

at 5-8, 11, 12. The Court denies the motion to compel as to Interrogatory No. 17.

Interrogatory No. 19 seeks information concerning agreements made between any

Defendant and John Deere or GK, related to the Twin Pak Baler. Doc. 83-1 at 16. Michael Grady

responded that there is no agreement with GK, but there is with John Deere. *Id.* at 16-17.

Plaintiff argues that response is insufficient and seeks further information as to the John Deere and GK agreements. Doc. 63 at 9. Michael Grady, in turn, responds that he had "little to no involvement with double baler and provided what information he had and cannot produce information to which he does not have personal knowledge." Doc. 83 at 6. Because Michael Grady has represented that he has no further information to produce, there is nothing for the Court the compel and the motion is denied as to Interrogatory No. 19.

Interrogatory No. 21 asks Michael Grady to provide information as to every sale, lease, or license of any product based on the Double Baler Design. Doc. 83-1 at 18. In his supplemental response, Michael Grady explained that "[t]hough Michael Grady is a shareholder in Twin Pak he has no personal knowledge of the sales and arrangements therefore in Twin Pak and this interrogatory is best asked of Twin Pak via Jason Grady." *Id.* He goes on to state, however, that "[a]s the sole owner of J&M Baling, Michael Grady purchased double Balers in arms-length transactions." *Id.* As Michael Grady has represented that he has no personal knowledge of sales he was not a part of, there is nothing further for the Court to compel regarding sales of which Michael Grady was not part. However, Michael Grady does acknowledge that he himself was involved in the purchase of a Double Baler with J&M Baling. Yet, he does not provide any specific information about that sale. The motion to compel is therefore granted in part: Michael Grady shall provide a complete response to Interrogatory No. 21 as to J&M Baling's purchases of Double Balers.

Interrogatory No. 22 asks Michael Grady to explain the projections for the sale, lease, and licensing of any product based on the Double Baler. Doc. 83-1 at 18. Michael Grady responded that he is aware that Twin Pak anticipates selling 10 units this year, but otherwise he has "no personal knowledge of even the existence of such information on the double balers being

sold by Twin Pak" and this question is "best asked of Twin Pak via Jason Grady." *Id.* at 19. Although Plaintiff seeks to compel further information, there is nothing further for the Court to compel from Michael Grady. Therefore, the Court denies the motion as to Interrogatory No. 22.

Interrogatory No. 23 seeks information regarding the damages Michael Grady seeks in his counterclaim. Doc. 83-1 at 19. In response, Michael Grady stated that "J&M is seeking damages in relation to defending against Plaintiff's allegations, the damages to reputation as a result of Plaintiff bringing this claim." *Id.* Plaintiff seeks to compel further information as to whether Michael Grady is claiming damages for himself personally. Doc. 63 at 9. In response, Michael Grady explains that he "did not state any personal damages, thus indicating by absence of statement that he personally is not seeking damages." Doc. 83 at 7. Plaintiff, however, remains unsatisfied, asserting that it "cannot bind Michael to a statement that he is not claiming damages by his statement that J&M is." Doc. 92 at 10. The Court agrees and the motion to compel as to Interrogatory No. 23 is granted. Michael Grady shall specifically state in supplemental interrogatory answers whether he, personally, is seeking damages as part of the counterclaim and, if he is, what those damages are.

Interrogatory No. 24 asks Michael Grady to:

> State and explain fully what your part or role was and what the part or role was of each Defendant in connection with the matters which are the subjects of the allegations of the Complaint, the Answer, and the Counterclaim, including without limitation the dealings with C & J, John Deere and GK, the design and development of the Twin Pak Baler(s), and the marketing and sale thereof.

Doc. 83-1 at 19. Michael Grady responded that his involvement was limited to "finances [for] developing and building the double balers." *Id.* at 20. The supplemental response added that "Michael G[r]ady has no personal knowledge of the business relationships and communications of his son Jason Grady other than second hand in passing verbal communications with his son concerning the GK, John Deere, and construction activities of the commercial[] double balers

being sold by Twin Pak." *Id.* Plaintiff first takes issues with this response because Michael Grady does not give information as to the actions of J&M and Twin Pak. Doc. 92 at 10-11. But Michael Grady's response stated he has no personal knowledge on the topic. Thus, there is no information from Michael Grady to compel, leaving Plaintiff to obtain the information requested from the other defendant companies that are most likely to possess this information. Second, Plaintiff argues that Michael Grady should answer whether he "only provided funding," or if he also consulted on the designs or directed or supervised the building. *Id.* at 11. But Michael Grady already answered those questions, by stating that his only involvement has been related to financing and building. Essentially, Plaintiff has a host of follow-up questions about this interrogatory answer which are better suited to a deposition rather than motions practice before the Court. The motion to compel as to Interrogatory No. 24 is denied.

Lastly, Plaintiff argues that Michael Grady's answers to the first set of interrogatories are not signed by counsel. Doc. 63 at 4. Michael Grady's supplemental answers (which also contain all his original answers) do contain counsel's signature, *see* Doc. 83-1, so this issue is moot. Plaintiff also argues that Michael Grady failed to provide a proper verification page. Indeed, the verification page is misdated as it indicates the discovery was provided in July 2022. Doc. 63-4. Again, however, Plaintiff acknowledges that Michael Grady has now provided an accurate verification, so this issue is moot. *See* Doc. 92-2.

B.   Requests for Production

In responding to the requests for production, Michael Grady objected to a few requests and then, "without waiving that objection," responded to the request. *See* Doc. 83-2 (Requests for Production Nos. 2, 3, 4). As with the interrogatories, Plaintiff argues that Michael Grady failed to state whether he withheld documents based on the objection. Doc. 63 at 10. However, contrary to his interrogatory answers, Michael Grady does state that he either is not withholding

documents based on an objection or that he has no responsive documents. *See generally*, Doc. 83-2. Accordingly, there is nothing further for the Court to compel. Plaintiff also asks the Court to strike Michael Grady's various objections. However, because Michael Grady did not actually withhold documents based on any objection, the Court declines this request.

C.     Attorney's Fees

Plaintiff asks for its fees in connection with the granting of its motion. Because the Court grants in part and denies in part the motion, it also denies Plaintiff's request for fees. *See* Fed. R. Civ. P. 37(a)(5)(C). Plaintiff also argues that an award of fees is justified because Michael Grady did not supplement his answers until after Plaintiff filed its motion to compel. *See* Fed. R. Civ. P. 37(a)(5)(A) (providing for an award of fees if a motion is granted *or* if discovery is provided after a motion to compel is filed). Plaintiff is correct that Michael Grady provided the supplemental discovery on August 28, which is after Plaintiff filed the motion to compel on August 22. However, as discussed above in the procedural history, Defendants appear to have miscalendared the parties' agreement as to when they would provide the supplements, believing the deadline was August 28. *See* Doc. 83 at 9. Thus, it is not clear that Plaintiff's motion precipitated the supplements. Therefore, the Court finds that an award of fees would be unjust. *See* Fed. R. Civ. P. 37(a)(5)(A)(iii).

Lastly, Plaintiff also appears to ask for fees as a sanction under Rule 37(b)(2)(C) for Michael Grady's failure to provide discovery responses by the July 7 deadline. Doc. 92 at 11. As discussed above, the Court extends that deadline and so denies Plaintiff's request for sanctions.

## IV.    Plaintiff's Motion to Compel Concerning Twin Pak, LLC's Discovery Responses (Doc. 64)

Plaintiff's motion to compel as to Defendant Twin Pak, like its motion to compel as to Defendant Michael Grady, raises issues with its general objections to interrogatories and requests

for production as well as issues with specific interrogatory answers. Doc. 64. The general, second half of Plaintiff's interrogatories and Defendant Twin Pak's general objections to these interrogatories are also similar to those involving Defendant Michael Grady. Not surprisingly, then, the Court's analysis and conclusions as to Defendant Twin Pak are like those involving Defendant Michael Grady. Rather than repeat the above analysis as to the general portion of Plaintiff's interrogatories to Twin Pak, the Court adopts it by reference. That is, for the reasons stated above, the Court sustains Twin Pak's objection related to the portions of interrogatories calling for all material or principal facts, information, documents, and persons supporting an answer. In its motion to compel, Plaintiff argues multiple times that Twin Pak did not provide a sufficient answer to an interrogatory because it failed to "provide a statement of what documents or persons with knowledge exist that may support the answer to the Interrogatory." Doc. 64 at 7. Because the Court sustains Twin Pak's objection to this portion of the interrogatories, the Court denies Plaintiff's motion to the extent it seeks to compel Twin Pak to identify all documents and persons with knowledge.  Below, the Court addresses the portions of interrogatories outside this sentence.

      A.    <u>Responses to Interrogatories</u>

Like Michael Grady, Twin Pak supplemented its responses to the first set of interrogatories. *See* Doc. 85-1. This appears to have resolved the alleged deficiencies in Interrogatory Nos. 2 and 14 as Plaintiff does not mention them in reply. *See* Doc. 93. The Court will thus address those interrogatories that Plaintiff still alleges are deficient, even after Twin Pak's supplementation.

Interrogatory No. 3 asks Twin Pak to explain "what the basis is for your denial of the allegations of Paragraph 17 of the Complaint" concerning the alleged agreement between Plaintiff and Jason Grady, including such information as, "if you deny Jason Grady acted 'on

24

behalf of and with the authority of all Defendants,' and if you do, the basis for that denial"; and "what your definition of such 'baler' was at that time." Doc. 85-1 at 4. Plaintiff asserts that Twin Pak's answer is incomplete because it failed to include its definition of "such baler" and failed to state whether Jason Grady was acting with the authority of all the Defendants (presumably meaning the other defendants besides Jason Grady). Doc. 93 at 9. Twin Pak, for its part, argues that the interrogatory never asked it to define baler, Doc. 85 at 5, which is a clear misreading of the question. Twin Pak also argues that it "has no information as to whether Jason Grady was acting on behalf of and with the authority of the other Defendants." Doc. 85 at 5. Although the Court recognizes that Twin Pak might not have information as to whether Jason Grady acted on behalf of other Defendants, it is likely to have information as to whether Jason Grady acted on its behalf. As such, the Court grants the motion to compel in part as to Interrogatory No. 3 and Twin Pak shall fully answer the part of the question asking to provide its definition of "such baler at that time" and state whether it denies that Jason Grady acted on behalf of or with the authority of Twin Pak.

Interrogatory No. 6 asks Twin Pak to identify and explain the substance of any communication any Defendant had with Mr. Epstien related to certain patents. Doc. 85-1 at 7. In Twin Pak's response and supplemental response, it explained that Mr. Epstein perfected the patent application owned by Jason Grady for the double baler and that "[t]he application documents in the patent file for the double baler in the US PTO speak for themselves." *Id.* at 8. Plaintiff takes issue with this response, arguing that Twin Pak "does not identify the materials it refers to as patent filings that 'speak for themselves.'" Doc. 93 at 9. But Twin Pak specifically refers to the application documents in the patent file with the USPTO, which is specific enough for Plaintiff to locate and identify the documents. *See* Fed. R. Civ. P. 33(d). It is unclear what

further information Plaintiff seeks as to these documents and so the motion to compel is denied as to Interrogatory No. 6.

Interrogatory No. 7 asks Twin Pak to explain the contention in paragraph 31 of its answer that C&J paid for drawing services which post-date the invention. Doc. 85-1 at 8. In response, Twin Pak stated that "the receipts and canceled check written to C&J against C&J invoices speak for themselves." *Id.* at 9. As with Interrogatory No. 6, Plaintiff believes this answer is insufficient because it refers to, but does not identify the receipts, checks and invoices. Doc. 93 at 9. However, the interrogatory specifically refers to paragraph 31 of the answer. Doc. 85-1 at 8. And paragraph 31 of the answer cites invoices and payments attached as Exhibit B. Doc. 5 ¶ 31; Doc. 5-2. Thus, in the context of the answer cited in the interrogatory, it is clear what receipts, checks, and invoices to which Twin Pak is referring. The Court denies the motion to compel as to Interrogatory No. 7.

Interrogatory No. 8 asks Twin Pak to explain its bases for denying that Defendants have been without authorization to use the Double Baler design. Doc. 85-1 at 10. Twin Pak did so, and as part of that response, referenced "an email from C&J (Chad Thornton) giving Jason Grady authorization to use the plans [for Jason Grady's invention] without any conditions on the use of the plans." *Id.* Plaintiff believes this answer is insufficient because it does not identify the email. Doc. 93 at 9. Again, Plaintiff seeks follow-up information that the interrogatory (aside from the overbroad language duplicated in nearly every interrogatory the Court will not enforce) did not request. The motion to compel is denied as to Interrogatory No. 8.

Interrogatory No. 9 asks Twin Pak to explain any agreements made between any Defendant and John Deere, GK, or any other party related to the Twin Pak Balers.[11] Doc. 85-1 at 11. In response, Twin Pak discussed some business agreements with John Deere and GK, but states that the construction and marketing agreements are confidential business information of Twin Pak. *Id.* at 11-12. Twin Pak does not explain how the confidentiality of business information would amount to a privilege against having to produce relevant, responsive information. In addition, Plaintiff points to the confidentiality agreement in this case, arguing that Twin Pak should produce complete information as to agreements with John Deere and GK. Doc. 93 at 10. Given the protective order in place in this case which protects "non-public trade secrets or non-public highly confidential proprietary business information," Doc. 32, the Court agrees with Plaintiff. Twin Pak shall provide a complete response to Interrogatory No. 9 as to agreements with John Deere and GK Machine.

Interrogatory No. 10 asks Twin Pak to explain whether it or any other Defendant ever duplicated, reproduced, copied, or distributed the Double Baler to other persons not parties in this action. Doc. 85-1 at 12. Plaintiff believes Twin Pak's answer is insufficient. Plaintiff acknowledges Twin Pak references numerous emails but complains that Twin Pak did not identify them and, except for John Deere and GK, does not answer the question as to other potential third parties. Doc. 93 at 10. The Court agrees that Twin Pak's response is missing information as to other potential third parties and so grants the motion as to Interrogatory No. 10

---

[11] In its reply, Plaintiff states that it will limit its request to the "major agreements" in this case— i.e., those with John Deere and GK machine—and exclude agreements with third parties that only tangentially relate to the baler, such as purchases of materials to construct the baler. Doc. 93 at 9.

in part. The Court denies the motion as to further information about the emails because the interrogatory does not actually seek such information (outside the overbroad language).

Interrogatory No. 11 asks Twin Pak to provide information regarding every sale or lease of any product based on the Double Baler design. Doc. 85-1 at 13-14. In response, Twin Pak stated that it is providing sale information via its accountant under the entity Grady Press Trailers and that "[t]he accounting documents speak for themselves." *Id.* at 14. Plaintiff argues that this response is unclear as to what these documents are and whether they have been produced. Plaintiff, however, fails to acknowledge Twin Pak's supplemental response in which it specifically points to the Grady Excel spreadsheet, showing all commercial sales. *Id.* In its response brief, Twin Pak further explains that there can be no confusion because the Excel spreadsheet is the only Excel spreadsheet produced as part of the supplement. Doc. 85 at 7. It is unclear what further information Plaintiff seeks; therefore, the motion is denied as to Interrogatory No. 11.

Interrogatory No. 12 asks Twin Pak to "[s]tate and explain fully what the projections are for the sale or lease or licensing of any product based on the Double Baler and/or Double Baler Design." Doc. 85-1 at 15. Twin Pak answered, stating in part that double balers are not leased. *Id.* However, as Plaintiff correctly points out, Twin Pak did not provide information on sales projections. *Id.* Accordingly, the motion is granted as to this part of Interrogatory No. 12 and Twin Pak shall provide a complete response as to sales projections.

Interrogatory No. 13 seeks information as to Twin Pak's claims for damages. Doc. 85-1 at 15. In response, Twin Pak provided a partial answer as to the types of damages it will seek. As Plaintiff points out, however, Twin Pak did not respond to the part of the question asking for an amount and computation of damages. Twin Pak argues that it does not need to provide an

amount or computation because those questions call for a legal conclusion. Doc. 85 at 7. The Court disagrees that the amount and computation of damages is an inappropriate topic for discovery; indeed, such information should already have been disclosed with initial disclosures. *See* Fed. R. Civ. P. 26(a)(1)(A)(iii) (providing for disclosure of "a computation of each category of damages claimed by the disclosing party"). The Court therefore grants the motion as to this part of Interrogatory No. 13 and Twin Pak shall provide an amount and computation for the categories of damages it is seeking.

Lastly, Plaintiff argues that Twin Pak's answers to the first set of interrogatories are not signed by counsel. Doc. 64 at 4. Twin Pak's supplemental answers (which also contain all its original answers) do, however, contain counsel's signature, *see* Doc. 85-1, so this issue is moot. Plaintiff also argues that Twin Pak failed to provide a proper verification page. Indeed, the verification page is misdated as it indicates the discovery was provided in July 2022. Doc. 64-4. Again, however, Plaintiff acknowledges that Twin Pak has now provided an accurate verification, Doc. 93 at 3; *see also* Doc. 93-2, and so this issue is moot.

B.    Objections to Requests for Production

In responding to the requests for production, Twin Pak made various objections (such as overly broad, seeks information not likely to lead to the discovery of admissible evidence, or speculative) and then, "without waiving that objection," responded to the requests. *See generally* Doc. 64-5. Plaintiff argues that Twin Pak failed to state whether it withheld documents based on the objections. Doc. 64 at 10. In its supplemental responses to requests for production, Twin Pak does state that it either is not withholding documents based on an objection or that it has no responsive documents. *See generally*, Doc. 85-2. Accordingly, nothing remains for the Court to compel. Plaintiff also asks the Court to strike Twin Pak's various objections. Because Twin Pak did not actually withhold documents based on any objection, however, addressing this question

will have no effect on discovery provided. The Court therefore denies Plaintiff's motion to strike as moot for the purpose of its motion to compel the production of documents.

      C.    <u>Attorney's Fees</u>

Plaintiff asks for its fees in connection with the granting of its motion. However, because the Court grants in part and denies in part the motion, it also denies Plaintiff's request for fees. *See* Fed. R. Civ. P. 37(a)(5)(C). Plaintiff also argues that an award of fees is justified because Twin Pak did not supplement until after Plaintiff filed its motion to compel. *See* Fed. R. Civ. P. 37(a)(5)(A) (providing for an award of fees if a motion is granted *or* if discovery is provided after filing). Plaintiff is correct that Twin Pak provided the supplemental discovery on August 28 after Plaintiff filed the motion to compel on August 22. However, as discussed above in the procedural history, Defendants appear to have miscalendared the parties' agreement as to when they would provide the supplements, believing the deadline was August 28. *See* Doc. 85 at 10. Thus, it is not clear that Plaintiff's motion precipitated the supplements. Therefore, the Court finds that an award of fees would be unjust. *See* Fed. R. Civ. P. 37(a)(5)(A)(iii).

Lastly, Plaintiff also appears to ask for fees as a sanction under Rule 37(b)(2)(C) for Twin Pak's failure to provide discovery responses by the July 7 deadline. Doc. 93 at 11. As discussed above, the Court extends that deadline and so denies Plaintiff's request for sanctions.

**V.    Plaintiff's Motion to Compel Concerning J&M Baling, Inc.'s Discovery Responses (Doc. 65)**

Plaintiff's motion to compel as to Defendant J&M Baling, like its motion to compel as to Defendant Michael Grady, raises issues with its general objections to interrogatories and requests for production as well as issues with specific interrogatory answers. Doc. 64. The general, second half of Plaintiff's interrogatories and Defendant J&M Baling's objections to these interrogatories are also similar to those involving Defendant Michael Grady. For the reasons

stated above, the Court sustains J&M Baling's objection related to the portions of interrogatories calling for all material or principal facts, information, documents, and persons supporting an answer. In its motion to compel, Plaintiff argues multiple times that J&M Baling did not provide a sufficient answer to an interrogatory because it failed to provide a statement of what documents or persons with knowledge exist that may support the answer to the Interrogatory. Because the Court sustains J&M Baling's objection to this portion of the interrogatories, the Court denies Plaintiff's motion to the extent it seeks to compel J&M Baling to identify all documents and persons with knowledge.  Below, the Court addresses the motion to compel as it relates to portions of interrogatories outside this overbroad language.

A.     Responses to Interrogatories

Like Michael Grady, J&M supplemented its responses to the first set of interrogatories. *See* Doc. 84-2. This appears to have resolved the alleged deficiency in Interrogatory No. 2 as Plaintiff does not mention that interrogatory in reply. *See* Doc. 91. The Court will thus address those interrogatories that Plaintiff alleges remain deficient after J&M's supplementation.

Interrogatory No. 3 asks J&M,

As to Paragraph 17 of your Answer, other than that you deny there was an "agreement" between C & J and Defendants, state and explain fully what the basis is for your denial of the allegations of Paragraph 17 of the Complaint [that Jason Grady on behalf of all Defendants entered into an agreement that Plaintiff would provide services for the Double Baler project in exchange for an ownership interest], and specifically if you deny Jason Grady acted "on behalf of and with the authority of all Defendants," and if you do, the basis for that denial; and what the factual basis is for your allegation "that the baler was designed solely by Defendants prior to any conversations or contact by Defendants with C & J," and what your definition of such "baler" was at that time.

Doc. 84-2. Plaintiff asserts that J&M's answer and supplemental answer do not respond to two parts of the question: whether Jason Grady acted with the authority of all Defendants and what J&M's definition of "such baler" was at that time. Doc. 91 at 10. J&M argues that the

interrogatory never asks it to define "baler," Doc. 84 at 4, which is inaccurate as the interrogatory clearly includes such a question, Doc. 84-2 at 5. The Court will thus compel J&M to provide its definition of "such baler at that time." J&M also argues it "has no information as to whether Jason Grady was acting on behalf of and with the authority of any other Defendants." Doc. 84 at 5-6. Although the Court recognizes that J&M might not have information as to whether Jason Grady acted on behalf of other Defendants, it would have information as to whether Jason Grady acted on its behalf. As such, the Court grants the motion to compel in part as to Interrogatory No. 3 and J&M shall state whether it denies that Jason Grady acted on behalf of or with the authority of J&M.

Next, Plaintiff argues that J&M's answers to Interrogatories Nos. 4-8 and 13 are insufficient because "they do not provide a statement of what document or persons with knowledge exist that may support the answer to the Interrogatory." Doc. 65 at 7; *see also* Doc. 91 (reply, seeking such documents as baler designs, patent applications, or related communications). As stated above, the Court sustains J&M Baling's objection to this language in the interrogatories. Therefore, the Court denies Plaintiff's motion where it seeks to compel J&M Baling to identify all documents and persons with knowledge.

Similarly, Plaintiff argues that the answers to Interrogatories No. 5 and 7 are incomplete because J&M's responses refer to J&M employees, but fail to identify those employees. Doc. 91 at 10. Plaintiff's interrogatories, however, do not ask for information about employees. *See* Doc. 84-2 at 7 (Interrogatory No. 5, asking J&M to explain the basis for its allegation that the Twin Pak Baler was designed before engaging with the production of drawing by Plaintiff and to describe what acts Defendants have engaged in to manufacture, market, and sell Twin Pak Balers); *id.* at 9 (Interrogatory No. 7, asking J&M to state the date of actual invention and the

basis for such assertion). Again, Plaintiff seeks follow-up information not specifically requested in the original interrogatories. Further, Plaintiff will have the opportunity to obtain such information during the appropriate deposition. For these reasons, the Court denies the motion to compel as to Interrogatories No. 5 and 7.

Lastly, Plaintiff argues that J&M's answers to the first set of interrogatories are not signed by counsel. Doc. 65 at 4. J&M's supplemental answers (which also contain all its original answers) do contain counsel's signature, *see* Doc. 84-2, so this issue is moot. Plaintiff also argues that J&M failed to provide a proper verification page. Indeed, the verification page is misdated as it indicates the discovery was provided in July 2022. Doc. 65-4. Again, however, Plaintiff acknowledges that J&M has now provided an accurate verification, Doc. 91 at 3; *see also* Doc. 91-2, and so this issue is moot.

B.    Objections to Requests for Production

In responding to the requests for production, J&M inserted various objections (such as overly broad, unduly burdensome, or seeks information not likely to lead to the discovery of admissible evidence) and then, "without waiving that objection," responded to the requests. *See generally* Doc. 64-5. Plaintiff argues that J&M failed to state whether it withheld documents based on the objection. Doc. 64 at 10. In its supplemental responses, J&M stated that it either is not withholding documents based on an objection or that it has no responsive documents. *See generally* Doc. 85-2. Accordingly, nothing remains for the Court to compel. Plaintiff also asks the Court to strike J&M's various objections, but because J&M did not actually withhold documents based on any objection, addressing this question will have no effect on discovery provided. The Court therefore denies Plaintiff's motion to strike as moot for the purpose of its motion to compel the production of documents.

C.      Attorney's Fees

Plaintiff asks for its fees in connection with the granting of its motion, but because the

Court grants in part and denies in part the motion, it also denies Plaintiff's request for fees. *See*

Fed. R. Civ. P. 37(a)(5)(C). Plaintiff also argues that an award of fees is justified because J&M

did not supplement until after Plaintiff filed its motion to compel. *See* Fed. R. Civ. P. 37(a)(5)(A)

(providing for an award of fees if a motion is granted *or* if discovery is provided after filing).

Plaintiff is correct that J&M provided the supplemental discovery on August 28 after Plaintiff

filed the motion to compel on August 22. However, as discussed above in the procedural history,

Defendants appear to have miscalendared the parties' agreement as to when they would provide

the supplements, believing the deadline was August 28. *See* Doc. 84 at 8. Thus, it is not clear that

Plaintiff's motion precipitated the supplements. Therefore, the Court finds that an award of fees

would be unjust. *See* Fed. R. Civ. P. 37(a)(5)(A)(iii).

Lastly, Plaintiff also appears to ask for fees as a sanction under Rule 37(b)(2)(C) for

J&M's failure to provide discovery responses by the July 7 deadline. Doc. 91 at 12. As discussed

above, the Court extends that deadline and so denies Plaintiff's request for sanctions.

**VI.     Plaintiff's Motion to Compel Concerning Michael Jason Grady's Discovery Answers (Doc. 66)**

Plaintiff's motion to compel as to Defendant Michael Jason Grady ("Jason Grady"), like

its motion to compel as to Defendant Michael Grady, raises issues with its general objections to

interrogatories and requests for production as well as issues with specific interrogatory answers.

Doc. 64. The general, second half of Plaintiff's interrogatories and Defendant Jason Grady's

objections to these interrogatories are also similar to those involving Defendant Michael Grady.

For the reasons stated above, the Court sustains Defendant Jason Grady's objection related to the

portions of interrogatories calling for all material or principal facts, information, documents, and

persons supporting an answer. In its motion to compel, Plaintiff argues multiple times that Jason Grady did not provide a sufficient answer to an interrogatory because it failed to provide a statement of what documents or persons with knowledge exist that may support the answer to the Interrogatory. Because the Court sustains Jason Grady's objection to this portion of the interrogatories, the Court denies Plaintiff's motion to the extent it seeks to compel Jason Grady to identify all documents and persons with knowledge.  Below, the Court addresses the motion to compel as it relates to portions of interrogatories outside this overbroad language.

A.      Responses to Interrogatories

Like Michael Grady, Jason Grady supplemented his responses to the first set of interrogatories. *See* Doc. 82-1. This appears to have resolved the alleged deficiencies in Interrogatory No. 1 as Plaintiff does not mention that interrogatory in its reply. *See* Doc. 94. The Court will thus address those interrogatories that Plaintiff alleges remain deficient after Jason Grady's supplementation.

Interrogatory No. 2 asks Jason Grady to explain the business and legal relationship between the Defendants. Doc. 82-1 at 3-4. As Plaintiff correctly points out, Jason Grady's initial answer only addressed a subset of the Defendants. *Id.* at 4. His supplemental answer, however, addressed all Defendants. *Id.* Plaintiff identifies no portion of the interrogatory, outside the overbroad language, that calls for further information. The Court denies the motion to compel as to Interrogatory No. 2.

Interrogatory No. 3 requests that Jason Grady identify each person who has knowledge concerning the facts and issues in this case and states "This includes . . . persons with whom you communicated while you were dealing with C & J." Doc. 82-1 at 4-5. Jason Grady listed a number of individuals at Twin Pak, but only generally states that "John Deere and GK know the level of ownership and control I have due to the business relationship between Twin Pak and the

two companies." *Id.* at 5. As Plaintiff points out, this response does not provide information

concerning individuals at John Deere or GK who have relevant information. The Court, thus,

grants the motion in part and Jason Grady shall identify each person at John Deere or GK who

has information concerning the facts of this case. Plaintiff also asserts that, in response to

Interrogatory No. 3, Jason Grady fails to identify individuals within Plaintiff's own company

who have relevant information. Doc. 94 at 8. The Court agrees that if Jason Grady

communicated with Plaintiff's employees, Jason Grady should say so and identify them.

Interrogatory No. 4 asks Jason Grady to describe his meeting(s) with Chad Thornton,

including the dates, times, subjects, and types of meeting. Doc. 82-1 at 6. In lieu of providing

such details, Jason Grady cited "[e]mails and phone calls made [that] show contact with

Thornton." *Id.* at 7. Plaintiff argues that this general reference to emails does not sufficiently

identify the emails such that Plaintiff would be able to locate them as required by Rule 33(d).

Doc. 66 at 8. Federal Rule of Civil Procedure 33(d) provides that

> If the answer to an interrogatory may be determined by examining, auditing,
> compiling, abstracting, or summarizing a party's business records (including
> electronically stored information), and if the burden of deriving or ascertaining
> the answer will be substantially the same for either party, the responding party
> may answer by:
>
> (1) specifying the records that must be reviewed, in sufficient detail to enable the
> interrogating party to locate and identify them as readily as the responding party
> could; and

The Court agrees with Plaintiff that the general reference to emails with Chad Thornton does not

contain sufficient detail to enable Plaintiff to identify the emails. The motion is granted as to this

part of Interrogatory No. 4.

Interrogatory No. 5 asks Jason Grady a series of questions about his denial of the

existence of an agreement between C&J and Defendants. Doc. 82-1 at 8. Although Jason Grady

answers the majority of the question, he failed to answer the specific sub-question of whether he

acted on behalf of and with the authority of all Defendants. *Id.* Jason Grady argues that his answer states that he did not act at all, therefore implying that he could not have acted on behalf of the other Defendants. Doc. 82-1 at 6. Indeed, the answer stated that Jason Grady never entered into a business relationship with C&J or Thornton. *Id.* at 8. However, the answer goes on to state Jason Grady worked with C&J and Thornton for the purpose of drafting plans for and constructing two prototypes. *Id.* Given Jason Grady's statement that he worked with C&J and Thornton, the Court orders him to also answer the sub-question of whether he did so on behalf of and with the authority of all Defendants. The motion is granted as to Interrogatory No. 5.

Interrogatory No. 13 asks Jason Grady to explain his denial of the allegation that Plaintiff's employees were joint investors. Doc. 82-1 at 15. Jason Grady answered the interrogatory, and stated his evidence consists of his own videos of the original invention, as well as testimony from J&M employees. *Id.* at 16. Plaintiff moves to compel, seeking more specific information on the videos and employees. However, the first part of the interrogatory did not ask for this information. To the extent Plaintiff relies on the general language in the second half of the interrogatory, the Court has ruled it is overbroad. The Court denies Plaintiff's request as to Interrogatory 13.

Interrogatory No. 14 asks Jason Grady to explain his allegation that the Twin Pak Baler was designed before discussing the production of drawings with Plaintiff and also to describe what acts Defendants have engaged in to manufacture, market, and sell the Twin Pak Baler. Doc. 82-1 at 16. Jason Grady summarily argues that this interrogatory asks two separate questions, but "[r]egardless, in good faith, Defendant supplemented his answer making Plaintiff's issues moot." Doc. 82 at 6. To the extent Jason Grady is objecting to this interrogatory as containing multiple sub-parts and/or exceeding the allowable number of interrogatories, the Court finds such an

objection waived because it is not fully developed. Turning to Jason Grady's answer, the Court disagrees that the supplemental answer moots this issue. Jason Grady did respond to the first sub-question, but did not provide a response to the second sub-question. That is, he did not describe what acts Defendants have engaged in to manufacture, market, and sell the Twin Pak Baler. The Court orders that he do so.

Lastly, Plaintiff argues that "the supplemental answer again identifies videos and screenshots without identifying them." Doc. 94 at 10. The supplemental answer actually states that "Jason Grady has provided dated video and screen shots of his invention in operation baling hay in early 2016 more than a year before contacting C&J to assist with construction of two prototypes." Doc. 82-1 at 18. Jason Grady has identified and produced the video and screen shots, and, in response to the related request for production, has represented that no documents are being withheld from production. Doc. 86-1 at 12. Therefore, it appears Jason Grady has complied with Plaintiff's request for this information. Accordingly, the Court denies Plaintiff's motion to compel as it relates to Interrogatory 14.

Interrogatory No. 15 asks Jason Grady to explain any communication any Defendant had with Mr. Epstein, the attorney who assisted with the patent application. Doc. 82-1 at 18. In response, Jason Grady stated in part that "[t]he application documents in the patent file for the double baler in the US PTO speak for themselves," *id.* at 19, which Plaintiff argues is an insufficient answer to identify the documents being discussed. The Court disagrees and finds the description specific enough for Plaintiff to locate and identify the documents. *See* Fed. R. Civ. P. 33(d).

Jason Grady also stated in his response that any documents relating to his "intellectual property will only be produced under a confidentiality agreement." Doc 82-1 at 19. Plaintiff

argues that, because a confidentiality order has already been entered in this case, this statement "is improper and contrary to the representation by Defendant that nothing is being withheld." Doc. 94 at 10. The Court does not find that Jason Grady's statement that he will only produce intellectual property under a confidentiality agreement necessarily contradicts his statement that nothing is being withheld. Indeed, RFP No. 17 asked for all documents related to Interrogatory No. 15. In his response to RFP No. 17, Jason Grady produced responsive documents and stated no documents were withheld on the basis of a privilege or an objection. Doc. 86-1 at 16. Because there is nothing for the Court to compel, it denies the motion as to Interrogatory No. 15.

The first sub-question of Interrogatory No. 16 asks Jason Grady to explain Defendants' contention that C&J was paid for drawing services which post-date the actual invention. Doc. 82-1 at 20. Jason Grady responded to this question in his answer and supplemental answer. *Id.* The second sub-question asks Jason Grady to explain fully, and identify "what material or principal facts, information, documents, and person with knowledge of these matters exist and what knowledge such persons have, that support or relate to this Interrogatory or your denial in answer to this Interrogatory." *Id.* Plaintiff argues that Jason Grady's answer is evasive because it does not identify videos or individuals in response to the second question. Doc. 66 at 10. The Court has already rejected Plaintiff's motion to enforce the broad language used in almost all of its interrogatories. Thus, the Court will not compel Jason Grady to respond to the open-ended language in this second sub-question. Plaintiff also complains that Jason Grady's answer refers to invoices and a cancelled check, but does not identify them. Doc. 94 at 10. However, the interrogatory references Exhibit B to Defendants' answer and that exhibit clearly consists of invoices and a cancelled check. *See* Doc. 5-2. It is unclear what further information Plaintiff seeks, and so the motion is denied as to Interrogatory No. 16.

Interrogatory No. 18 asks Jason Grady to explain Defendants' assertion that Jason Grady directed the efforts of C&J employee Josh Tamminga to create the drawings. Doc. 82-1 at 22-23. In response, Jason Grady incorporated his answer to Interrogatory No. 9. *Id.* at 23. In his response brief, however, he explains that he actually meant to incorporate his answer to Interrogatory No. 14, Doc. 82 at 7. As Plaintiff points out, Jason Grady did not supplement the interrogatory response to reference the correct interrogatory, and so the Court will compel him to do so. Also, Plaintiff argues that Jason Grady failed to answer the part of the question asking what specifically Jason Grady did in directing the efforts of Josh Tamminga. In response, Jason Grady argues that "the best evidence in response to the knowledge of Josh Tamminga is testimony from C&J's former employee, Josh Tamminga." Doc. 82 at 6. However, the question does not ask for Josh Tamminga's knowledge, but what actions Jason Grady took in directing Josh Tamminga to create the drawings. The Court grants the motion as to this language in Interrogatory No. 18.

Interrogatory No. 19 asks Jason Grady to explain any agreements between any Defendant and John Deere, GK, or another third-party as to the Twin Pak Baler. Doc. 82-1 at 23. Plaintiff argues that Jason Grady answered the question with only a "general, high level response" and no details. Doc. 66 at 10. Indeed, Jason Grady did not provide specific details of agreements, but instead cited the actual marketing and construction agreements with John Deere and GK. Doc. 82-1 at 25. And he produced those agreements in response to a request for production. *See* Doc. 86-1 at 21 (Request for Production No. 24, seeking production of every document that relates to Interrogatory No. 19). Plaintiff does not explain why it was insufficient for Jason Grady to respond by citing the documents and also stating that no responsive documents were being

withheld from production. *Cf.* Fed. R. Civ. P. 33(d). The Court denies the motion as to Interrogatory No. 19.

Interrogatory No. 20 asks Jason Grady to explain whether any Defendant ever duplicated, reproduced, copied, or distributed the Double Baler Design to other persons not in this action. Doc. 82-1 at 25. Plaintiff asserts that Jason Grady's answer is insufficient because he referred to a "spreadsheet, 'accountant's documents,' and '[n]umerous emails between Twin Pak and Jason Grady and GK,' but does not identify them." Doc. 94 at 11. But Jason Grady referred to a spreadsheet and Twin Pak's accountant's documents, which he has already produced. And as to the emails, the interrogatory does not ask for details about such emails and so the Court will not compel information not specifically requested outside the language that has been ruled overbroad. The motion to compel is denied as to Interrogatory No. 20.

Interrogatory No. 21 asks Jason Grady to explain each and every sale, lease, or license of any product based on the Double Baler Design. Doc. 82-1 at 27-28. In response, Jason Grady points to a previously provided Excel spreadsheet. *Id.* at 28. Plaintiff argues he did "not identify" the spreadsheet Doc. 66 at 11. Addressing an identical interrogatory served on it, Twin Pak explained that there can be no confusion because the Excel spreadsheet in question is the only Excel spreadsheet produced as part of the supplementation. Doc. 85 at 7. Plaintiff did not disagree with the contention that it is obvious in the context of the production what spreadsheet shows the Double Baler-related sales. Therefore, it is unclear what further information Plaintiff seeks. The motion to compel regarding this part of Interrogatory No. 21 is denied.

Jason Grady also points to Twin Pak accounting records reflecting "payments and cost information," but states that the records are "being assembled." Doc. 82-1 at 28. Jason Grady provides no further information as to why those records have not yet been assembled and

produced and so the Court orders him to produce those documents or to fully answer the interrogatory without relying on a document production that has not yet been made.

Interrogatory No. 24 asks Jason Grady to, "State and explain fully what your part or role was and what the part or role was of each Defendant in connection with the matters which are the subjects of the allegations of the Complaint, the Answer, and the Counterclaim, including without limitation the dealings with C & J, John Deere and GK, the design and development of the Twin Pak Baler(s), and the marketing and sale thereof." Doc. 82-1 at 30. In response, Jason Grady directed Plaintiff to "[s]ee prior answers to Interrogatories." *Id.* Plaintiff argues that this answer is evasive because Jason Grady does not state which interrogatories he is referring to. Doc. 66 at 11. Jason Grady counters that he is referencing all prior answers and the Court agrees that is a complete answer. Interrogatory No. 24 is incredibly broad and non-specific as to the information it seeks. It is also repetitive of the other interrogatories submitted to Jason Grady (such as Interrogatory No. 2, explain the relationship between the Defendants; and Interrogatory No. 19, explain the agreements Defendants had with John Deere and GK), and the Court will not compel Jason Grady to restate all the information he has already provided and which is responsive to this interrogatory. The motion is denied as to Interrogatory No. 24.

Lastly, Plaintiff argues that Jason Grady failed to provide a proper verification page. Doc. 66 at 4. Indeed, the verification page is misdated as it indicates the discovery was provided in July 2022. Doc. 66-3. However, Plaintiff acknowledges that Jason Grady has now provided an accurate verification, Doc. 94 at 3; *see also* Doc. 94-1, and so this issue is moot.

B.    Objections to Requests for Production

In responding to the requests for production, Jason Grady objected to most requests (for reasons such as overly broad and seeks information in subparts not related to the primary request), and then, "without waiving that objection," responded to each request. *See generally,*

42

Doc. 86-1. Plaintiff argues that Jason Grady failed to state whether he withheld documents based on the objections. Doc. 66 at 11. In his supplemental response, Jason Grady states that he either is not withholding documents based on an objection or that he has no responsive documents. Doc. 86-1. Accordingly, there is nothing further for the Court to compel. Plaintiff also asks the Court to strike Jason Grady's various objections, but because Jason Grady did not actually withhold documents based on any objection, addressing this question will have no effect on discovery provided. The Court therefore denies Plaintiff's motion to strike as moot for the purpose of its motion to compel the production of documents.

Lastly, in its reply, Plaintiff argues for the first time that Jason Grady has withheld documents responsive to Request for Production Nos. 20, 6, and 2. Doc. 94 at 12-14. Plaintiff does not raise issues with these requests in his motion and the Court declines to address his arguments raised for the first time in reply. *See Reedy v. Werholtz*, 660 F.3d 1270, 1274 (10th Cir. 2011) ("The general rule in this circuit is that a party waives issues and arguments raised for the first time in a reply brief.") (cleaned up).

    C.    <u>Attorney's Fees</u>

Plaintiff asks for its fees in connection with the granting of this motion, but because the Court grants in part and denies in part the motion, it also denies Plaintiff's request for fees. *See* Fed. R. Civ. P. 37(a)(5)(C). Plaintiff also appears to ask for fees as a sanction under Rule 37(b)(2)(C) for Jason Grady's failure to provide discovery responses by the July 7 deadline. Doc. 94 at 14. As discussed above, the Court extends that deadline and so denies Plaintiff's request for sanctions.

<b><u>CONCLUSION</u></b>

For the reasons stated above, the Court rules as follows:

1.      Defendants' Motion for An Extension of Time to Answer and Respond to Plaintiff's Discovery Requests and Motion for Protective Order (Doc. 37) is GRANTED IN PART and DENIED IN PART:

      a) Defendants' deadline to respond to all of Plaintiff's first set of requests for production and Defendant Jason Grady's deadline to respond to Plaintiff's second set of requests for production is extended, nunc pro tunc, until July 21, 2023;

      b) Defendant Jason Grady's deadline to respond to the second set of interrogatories is extended until July 21, 2023;

      c) Defendants' request for a protective order as to the second set of interrogatories propounded on Jason Grady is denied;

      d) Defendants' request to prohibit Plaintiff from serving additional interrogatories is denied; and

      e) Defendants' request for attorney's fees is denied.

2.      Plaintiff's First Motion to Compel Defendants' Responses to Requests for Production and for Attorney Fees (Doc. 36) is DENIED. Both sides' requests for attorney's fees associated with this motion are likewise denied;

3.      Plaintiff's Motion to Compel Concerning Michael E. Grady's Discovery Responses (Doc. 63) is GRANTED IN PART AND DENIED IN PART. Defendant Michael Grady shall supplement the following discovery questions and the balance of the motion is denied (including attorney's fees):

      a) Interrogatory No 5: specifically state whether you deny that Jason Grady acted on behalf of and with the authority of Michael Grady, and if you do, the basis for that denial;

b) Interrogatory No. 14: describe what acts Defendants have engaged in and are engaging in to manufacture, market, and sell Twin Pak Baler. If Michael Grady has no information regarding the manufacturing, marketing, and selling of the Twin Pak Baler, he should specifically say so;

c) Interrogatory No 21: provide a complete response as to J&M Baling's purchases of Double Balers; and

d) Interrogatory No. 23: specifically state whether Michael Grady is seeking damages as part of the counterclaim and, if he is, specify what damages he is seeking.

4.    Plaintiff's Motion to Compel Concerning Twin Pak, LLC's Discovery Responses (Doc. 64) is GRANTED IN PART AND DENIED IN PART. Defendant Twin Pak shall supplement the following discovery questions and the balance of the motion is denied (including attorney's fees):

a) Interrogatory No. 3: provide Twin Pak's definition of "such baler" and state and explain whether Twin Pak denies that Jason Grady acted on behalf of or with the authority of Twin Pak;

b) Interrogatory No. 9: provide a complete response as to agreements with John Deere and GK Machine;

c) Interrogatory No. 10: state and explain whether any Defendant ever duplicated, reproduced, copied, or distributed the Double Baler Design to any other third party besides John Deere and GK;

d) Interrogatory No. 12: provide a complete response as to sales projections; and

e) Interrogatory No. 13: provide an amount and computation for the categories of damages Twin Pak is seeking.

5.  Plaintiff's Motion to Compel Concerning J&M Baling, Inc.'s Discovery Responses (Doc. 65) is GRANTED IN PART AND DENIED IN PART. Defendant J&M Baling shall supplement the follow discovery questions and the balance of the motion is denied (including attorney's fee):

a) Interrogatory No. 3: state whether J&M denies that Jason Grady acted on behalf of and with the authority of J&M and provide J&M's definition of "such baler."

6.  Plaintiff's Motion to Compel Concerning Michael Jason Grady's Discovery Requests (Doc. 66) is GRANTED IN PART AND DENIED IN PART. Defendant Jason Grady shall supplement the following discovery questions and the balance of the motion is denied (including attorney's fees):

a) Interrogatory No. 3: identify each person at John Deere or GK who has information concerning the facts of this case, and if Jason Grady communicated with Plaintiff's employees, say so and identify them;

b) Interrogatory No. 4: identify the emails with Chad Thornton referenced in the answer to this question;

c) Interrogatory No. 5: state whether Jason Grady took actions with C&J and Thornton on behalf of and with the authority of all Defendants;

d) Interrogatory No. 14: describe what acts Defendants have engaged in and are engaging in to manufacture, market, and sell the Twin Pak Baler;

e) Interrogatory No. 18: amend the cross-reference to the correct interrogatory (No. 14 instead of 9) and state what Jason Grady did in directing the efforts of Josh Tamminga; and

f) Interrogatory No. 21: produce the accounting records referenced in response to this question or fully answer the interrogatory without relying on a document production that has not been made.

7.   Defendants shall provide responses to the above within 30 days of the entry of this Order.

**STEVEN C. YARBROUGH**
**UNITED STATES MAGISTRATE JUDGE**